J. Kenneth Kelley
RYAN, RAPP, UNDERWOOD & PACHECO
3200 N. Central Ave., Suite 2250
Phoenix, AZ 85012
State Bar No. 030183
kkelley@rrulaw.com
(602) 280-1000

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Board of Trustees of IBEW Local No. 640 and Arizona Chapter NECA Health and Welfare Trust Fund, as fiduciary of its welfare benefit Plan, | Case No. _____ |
| | Hon. _____ |
| Plaintiff, | |
| v | **COMPLAINT** |
| CIGNA Health and Life Insurance Company, | |
| Defendant. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

# COMPLAINT

The Board of Trustees of IBEW Local No. 640 and Arizona Chapter NECA Health and Welfare Trust Fund (the "Board"), as fiduciary of its welfare benefit Plan (the "Plan"), states as follows for its Complaint against Cigna Health and Life Insurance Company ("Cigna"):

## PARTIES, JURISDICTION AND VENUE

1.      The Board is the Plan's fiduciary, plan sponsor and plan administrator as those terms are defined, respectively, in Section 402(a)(1) and 3(16)(A) and (B) of ERISA, 29 U.S.C. §§ 1102(a)(1) and 1002(16)(A) and (B). The Board's principal place of business is in Phoenix, Arizona.

2.      The Arizona Chapter of NECA and the IBEW Local No. 640 created the IBEW Local No. 640 and Arizona Chapter NECA Health and Welfare Trust Fund (the "Fund") pursuant to the Taft-Hartley Act.

3.      The Fund covers over 1,500 electricians in Phoenix, Arizona, thereby allowing employers and unions who are parties to collective bargaining agreements ("CBAs") to pool their resources and share the costs of running a welfare benefit plan.

4.      The Board for the Fund adopted and sponsors the Plan for the benefit of union members who are employed by the employers belonging to the Arizona Chapter of NECA.

5.      At all times relevant, the Plan was an employee welfare benefit plan under ERISA § 3(1), 29 U.S.C. § 1002(1).

6.      The Fund offers benefits to employees and members through the Plan.

2

7.      Participants of the Plan may choose between two benefit schedules.  One provides enhanced benefits through the utilization of high performance providers designated as Local Plus providers.  The other benefit schedule provides a lower level of benefits through all contracted providers.

8.      Rather than pay premiums to obtain health insurance to cover employee health care claims under the Plan, during the relevant time period the Fund has opted to self-fund. As such, the Fund paid the actual employee health care costs covered by the Plan.

9.      A self-funded arrangement is one in which the Plan Sponsor (the Board of Trustees in this case) pays the healthcare claims of participants and beneficiaries from the Fund, instead of obtaining insurance.  Generally speaking, for every dollar of claims incurred by a participant or beneficiary, the self-funded entity pays that dollar.  The participants or beneficiaries are responsible for any deductibles, co-pays, and premiums.

10.     Cigna is a corporation organized under the laws of Connecticut, its principal place of business is located at 900 Cottage Grove Road, Wilde Building, Bloomfield, CT 06152, and its registered agent is CT Corporation System, located at One Corporate Center, Hartford, CT 06103-3220.

11.     Cigna underwrites, sells, and administers health benefit plans and policies of health insurance.  It holds itself out as providing services to a variety of health benefit plans, including individual health benefit plans and group plans, such as employer-sponsored plans.

3

12.     Cigna, itself or through affiliated health maintenance organizations, provided claims administration services to the Plan.

13.     The Board, the Plan, and the Plan's participants relied on Cigna to provide competent and professional services in connection with Plan administration.

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), and under 29 U.S.C. § 1132(e) because this action is brought by a fiduciary for relief under ERISA.

15.     This Court has personal jurisdiction over Cigna because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process, and Cigna is a resident of the United States and subject to service in the United States.

16.     This Court has personal jurisdiction over Cigna pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Cigna would be subject to the jurisdiction of a court of general jurisdiction in Arizona:  Cigna resides or may be found in this district, or has consented to jurisdiction in this district.  Further, this Court has personal jurisdiction over Cigna because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Arizona; Cigna is authorized to do business in Arizona; Cigna conducts business in Arizona and this District; Cigna advertises and promotes its services in the State of Arizona and this District; and Cigna otherwise intentionally marketed and sold insurance and related products and services in this State.

4

17.     Venue is proper in this District under 28 U.S.C. § 1392(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred within, and/or a substantial part of the subject property is situated in, this District.

18.     Venue is also proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because some or all of the fiduciary breaches or other violations for which relief is sought occurred in or originated in this District.

## GENERAL ALLEGATIONS

19.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

20.     This dispute arises out of Cigna's ongoing and systematic ERISA violations stemming from an elaborate scheme to embezzle and convert ERISA plan assets through a pattern of fraudulent transactions and prohibited self-dealing.

21.     Rather than protect the Plan's assets as it is statutorily obligated to do, Cigna engaged in statutorily prohibited transfers of plan assets deceptively masked as cost-saving measures.

**A.      Cigna functioned, and continues to function, as a fiduciary to the Plan.**

22.     Administrators for self-funded plans are ERISA fiduciaries when they have discretion to either manage plan assets or determine claims made against the plans. *King v. Blue Cross & Blue Shield of Illinois*, 871 F.3d 730, 745 (9th Cir. 2017). An administrator has discretion to manage plan assets when a self-funded plan places its assets with the administrator to pay benefits. *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 745-46 (6th Cir. 2014). An administrator's

discretion to determine claims made against the plan is conclusively demonstrated when the administrator has the power to grant, deny, or review denied claims.

23.    Cigna administered the Plan by paying covered healthcare claims for the Plan using money provided to it by the Fund.

24.    In essence, Cigna would process and pay claims on behalf of the Board, and the Plan's participants and beneficiaries, using the Plan's assets.

25.    The Plan is funded by contributions from employers, employees, and retirees, and the amounts of those contributions are determined by, among other things, actual Plan costs or expenditures in prior periods.

26.    The funding is then used to pay claims of participants and beneficiaries.

27.    In exchange for its services, Cigna receives compensation from the Plan, including the fees discussed below.

28.    The Plan (through the Fund) established and maintained a bank account and funded that account with amounts sufficient at all times to pay claims and make other payments, such as payments for administrative costs and fees.

29.    These other payments included amounts Cigna paid itself and its affiliates or subcontractors.

30.    The prepayments sent to this bank account were "Plan Assets" as defined by ERISA §3(42), 29 U.S.C. § 1002(42).

31.    Cigna had complete authority and control over the bank account and the Plan Assets sent to it.

32.    Cigna used that authority and control to pay itself from the bank account.

6

33.     Cigna also had authority to receive and review claims for Plan benefits, determine Plan benefits, and, if any were payable for such claims, disburse payments of Plan benefits to healthcare providers.

34.     Cigna also had discretion and control over administrative procedures and over claims data.

35.     Cigna (1) exercised discretionary authority and control with respect to management of the Plan; (2) exercised authority and control with respect to management and disposition of Plan Assets, including computation of and payment of claims; and/or (3) had discretionary authority and responsibility in the administration of the Plan, including negotiation with providers regarding charges to be paid under the terms of the Plan.

36.     Cigna had control over the factors that determined its own compensation.

37.     Cigna also possessed skill and knowledge regarding the administration and payment of claims superior to the knowledge of the Fund, its Board of Trustees, and the Plan.

38.     Cigna knew these entities and individuals were relying on Cigna's superior knowledge and skill to administer the Plan.

39.     Cigna is one of the largest health service companies in the U.S. market and has been providing services for over 125 years.

40.     Cigna holds itself out as an expert in the healthcare field.

41.     Cigna functioned as a fiduciary in its administration of the Plan.

**B.**     <u>**Cigna's ERISA Fiduciary Duties**</u>.

42.     ERISA imposes strict fiduciary duties upon plan fiduciaries like Cigna.

ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

43.     **The Duty of Loyalty.** ERISA imposes on a plan fiduciary the duty of loyalty–that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ."

44.     The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.

45.     A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

46.     **The Duty of Prudence.**  Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence–that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care,

skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

47.   **The Duty to Inform and Disclose.**  The duties of loyalty and prudence include the duty to disclose and inform.  These duties entail: (a) a negative duty not to misinform; (b) an affirmative duty to inform when a fiduciary knows or should know that silence might be harmful; and (c) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

48.   **The Duty to Pay No More Than Reasonable Fees.**  A fundamental obligation of an ERISA fiduciary is to charge and receive only reasonable fees. ERISA § 406 specifically prohibits a fiduciary from charging or receiving unreasonable or unnecessary fees.  28 U.S.C. § 1108(b).

49.   **Prohibited Transactions.** ERISA's prohibited transaction rules bar fiduciaries from certain acts because they are self-interested or conflicted and therefore become per se violations of ERISA § 406(b)–or because they are improper "party in interest" transactions under ERISA § 406(a).  As noted above, under ERISA, a "party in interest" includes a fiduciary, as well as entities providing any "services" to a plan, among others.  *See* ERISA § 3(14), 29 U.S.C. § 1002(14).  ERISA's prohibited transaction rules are closely related to ERISA's duties of loyalty, as discussed above.

50.   **The Duty to Monitor.** In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or

delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA participants and beneficiaries.

51.     As noted above, the power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.

52.     **Non-fiduciary Liability.** Under ERISA, any person or entity that is neither a fiduciary nor party-in-interest who knowingly participates in a fiduciary breach is liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

53.     Accordingly, even ignoring Cigna's fiduciary or party-in-interest status, it must restore unjust profits or fees and is subject to other appropriate equitable relief with regard to the transactions at issue in this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and well-established case law.

54.     Even if Cigna is not a fiduciary or party-in-interest regarding any transaction at issue in this action, it is subject to equitable relief under ERISA based on its actual or constructive knowledge of the wrongdoing at issue.

55.     **Rights of Action Under the Plans, for Fiduciary Breach and Prohibited Transactions.** ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants and fiduciaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The remedies available pursuant to § 502(a)(3) include remedies for breaches of fiduciary duties set forth in ERISA §

10

406, 29 U.S.C. § 1106.  Further, ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

56.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets.

57.    ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

**C.    Cigna Illegally and Surreptitiously Paid Itself Additional Administrative Compensation From Plan Assets Entrusted to It Under the Guise of a Cost-Containment Program Applicable to Out-of-Network Claims.**

58.    Through the Fund, Cigna received large sums of money it was supposed to use to pay employee health care claims and costs.

59.    Starting in 2016, Cigna concocted a scheme to secretly obtain more compensation than it was entitled to, at the Plan's expense.

60.    Contrary to Cigna's fiduciary duty to charge only reasonable fees for the administration of the Plan, Cigna charged excessive fees to the Plan.

61.    Cigna charged fees for negotiating payments to non-participating providers, ("Providers") as a so-called "cost containment service."

62.    Instead of paying itself fees at or near market rates, Cigna grossly overpaid itself fees exceeding those rates, under the guise of a "savings" compensation

structure, to cloak blatant misappropriation of funds. These fees are hereinafter referred to as the "Hidden Fees."

63.     For example, for a September 30, 2018 service date, a provider charged $2,956.  The total amount paid for that claim was $216.69.  Cigna paid itself a $969.72 "fee" (approximately <u>447% of the total amount paid)</u> for administering this claim on top of its regular administrative fees.

64.     Plaintiff is aware of numerous instances where the Plan never paid providers for charges, but Cigna charged the Plan thousands of dollars in Hidden Fees. For example:

       a.     For a December 20, 2018 service date, a provider charged $5,446. The total amount paid for that claim was $0.  Cigna nevertheless paid itself a $1,782.74 "fee" for this claim, again on top of its regular administrative fee, even though the claim was or should have been denied.

       b.     For a May 21, 2019 service date, a provider charged $2,185.  The total amount paid for that claim was $0.  Cigna paid itself an additional $655.79 "fee" for a claim that was or should have been denied.

       c.     For a January 23, 2019 service date, a provider charged $15,600. The total amount paid for that claim was $0.  Cigna nevertheless paid itself an additional $5,308.37 "fee" for this claim, which was or should have been denied.

d.  For a April 1, 2019 service date, a provider charged $2,401.  The total amount paid for that claim was $0.  Cigna nevertheless paid itself an additional $802.81 "fee" for this claim, which was or should have been denied.

e.  For a March 9, 2019 service date, a provider charged $23,335.20.  The total amount paid for that claim was $0.  Cigna nevertheless paid itself an additional $7,892.24 "fee" for this claim, which was or should have been denied.

65.  Cigna has been paying itself Hidden Fees calculated off of non-participating providers' fraudulently inflated billed charges.

66.  In other words, Cigna processed grossly inflated healthcare claims from Providers, and then used those inflated claims to calculate the amount of Hidden Fees to pay itself.

67.  For example, for an October 20, 2018 service date, a provider charged $6,000.  The total amount paid for that claim was $48.76.  Cigna paid itself an additional $2,006.84 "fee" for this claim, representing approximately 4,115.75% of the total amount paid.

68.  Cigna knows when Providers' bills are grossly inflated, but nevertheless bases its compensation on those fraudulent bills.

69.  The money being paid is not Cigna's, so using inflated bills to calculate its additional fees costs Cigna nothing.

13

70.     Cigna is self-interested in not contesting fraudulent bills because it uses those inflated amounts to calculate, and inflate its own Hidden Fees.

71.     In other words, Cigna is utilizing Providers' fraud to benefit itself at the expense of the Plan and its fiduciaries, including Plaintiff.

72.     The more fraudulent billing there is by Providers, the more profits Cigna realizes under its Hidden Fees scheme.

73.     Upon information and belief, Cigna has taken an undisclosed and improper financial stake in this fraudulent arrangement and is improperly benefiting from it to the detriment of the Plan and Plan fiduciaries, including Plaintiff.

74.     Cigna's practice of knowingly using fraudulent and improper claims  as a basis for its own compensation is widespread and would cost Cigna millions of dollars to correct.

75.     From 2011 forward, these fraudulent claims (and fees insurance companies collect off of these claims) have already been on the rise, quadrupling spending on routine analyses and tests.  *See* NPR, *Why Your Health Insurer Doesn't Care About Your Big Bills*, https://www.npr.org/sections/health-shots/2018/05/25/613685732/why-your-health-insurer-doesnt-care-about-your-big-bills, May 25, 2018 article attached as **Exhibit A**; THE CENTER FOR PUBLIC INTEGRITY, *Court Case Shows How Health Insurers Rip Off You and Your Employer*, https://publicintegrity.org/health/court-case-shows-how-health-insurers-rip-off-you-and-your-employer/, May 11, 2015 article attached as **Exhibit B**.

14

76.     Cigna's practice of paying itself Hidden Fees directly affected the Plan and Plan fiduciaries, including Plaintiff.

77.     Cigna has used the aforementioned schemes to pay itself exorbitant amounts using Plan Assets. These Hidden Fees have cost the Plan and Plaintiff millions of dollars in overpayments.

**D.    Cigna Misrepresented Its Cost Containment Program as Applying Only to Out-of-Network Claims.**

78.     Cigna has also been charging the Plan Hidden Fees on in-network claims, all the while misrepresenting to the Plan and Plan fiduciaries that its so-called "cost containment" process only applied to claims submitted by non-participating providers.

79.     Cigna has used this misrepresentation as cover for its collection of Plan Assets in the guise of cost-containment fees based on a percentage of the "savings."

80.     Specifically, Cigna has been paying itself Hidden Fees in addition to other agreed-upon administrative fees.

81.     For example, Cigna has admitted that claims submitted by network providers for services to Participants who chose the Local Plus benefit schedule, but not necessarily Local Plus providers, are treated as out-of-network by Cigna.

82.     In reality, they are in-network and should are not subject to the "cost-containment" program.

83.     Cigna, however, charges the Plan twice for the same service.

84.     Cigna also improperly pays itself (using Plan Assets) "vendor's fees" for purported services.

15

85.     Cigna misrepresents to the Plan and Plan fiduciaries that these fees are being paid to third-party vendors; in reality, Cigna has been paying itself some or all of these fees.

86.     In summary, Cigna has been paying claims not contemplated by the Plan, and using these illegitimate payments to pay itself Hidden Fees.

87.     Cigna has been misrepresenting its so-called "cost containment program" as a cost-savings mechanism to save the Plan money on out-of-network claims administration when, in reality, Cigna is utilizing it to steal Plan Assets and enrich itself at the Plan and Plaintiff's expense.

88.     Using its so-called "cost containment program" as a smokescreen, Cigna charged the Hidden Fees to the Plan and Plaintiff without disclosing them.

89.     This allowed Cigna to conceal the Hidden Fees, giving an illusion that it was containing costs, while actually increasing its revenue at the Plan's and Plaintiff's expense, in violation of the Plan's terms.

**E.     Cigna's Practice of Knowingly Paying Fraudulent and Improper Claims and Profiting Off Those Claims Contravenes Industry Standards, Contradicts Cigna's Alleged Advantages, and Violates Plan Documents.**

90.     The health insurance industry has standards and norms, which consider improper payments for healthcare claims to be fraud.

91.     Cigna's payment of claims it knows to be fraudulent, and its calculation and collection of Hidden Fees based on those fraudulent claims, violates industry standards and its duties to the Plan.

16

92.     Cigna's Hidden Fees scheme also directly contravenes the way Cigna holds itself out to the public.

93.     Cigna's own website warns the public that "even a small amount of health care fraud can raise the cost of health care benefits for everyone."  *See* **Exhibit C**; https://www.cigna.com/reportfraud/.

94.     Cigna's website states that a common example of health care fraud is "upcoding – billing for a more costly service than the one actually performed." *Id.*

95.     Cigna goes further than explaining the dangers of health care fraud. Cigna holds itself out as an expert in preventing such fraud. *See id.*

96.     With supposed expertise in fraud prevention, Cigna represents that: "Our Corporate Audit Department's Special Investigations (SI) team is responsible for minimizing Cigna's risk to health care fraud. The SI team partners with Cigna's Customer Service Claim Centers and others to help identify suspicious claims, stop payments to fraudulent providers and punish wrongdoers."

97.     Cigna represented that it "works with state and federal law enforcement and regulatory agencies and other insurance companies to detect, prevent and prosecute health care fraud. The SI team includes trained professionals with expertise in investigations, health care, nursing, law enforcement and accounting." *Id.*

98.     However, Cigna's knowing payment of fraudulent and improper claims, and using such fraudulent and improper claims to calculate the Hidden Fees it pays itself, is in complete contravention of its alleged concern, diligence, and reputation for preventing fraud.

17

99.    Cigna's payment of fraudulent and improper claims is also inconsistent with Plan documents.

100.    Plaintiff trusted and believed that Cigna was acting in Plaintiff and the Plan's best interest based on Cigna's representations of fraud prevention expertise, the Plan documents, and the fact that information Cigna provided to Plaintiff, the Plan, and Plan fiduciaries contained no disclosure of its practice of paying and profiting off of fraudulent and improper claims.  As explained above, Plaintiff's trust was misplaced.

**F.    Cigna Fraudulently Concealed the Hidden Fees.**

101.    Cigna went to great lengths to hide its schemes from the Plan and Plan fiduciaries, all while paying itself more and more Hidden Fees.

102.    The Hidden Fees were never disclosed, much less agreed to, by the Plan or Plaintiff.

103.    Because the Plan and its fiduciaries, including Plaintiff, were left intentionally in the dark by Cigna, Plaintiff had no knowledge of Cigna's mismanagement and breaches of fiduciary duty.

104.    Plaintiff never imagined, nor had reason to imagine based on Plan documents, that Cigna would knowingly pay fraudulent and improper claims and pay itself Hidden Fees.

105.    Furthermore, the limited reporting information Cigna provided contained no information about Cigna's practice of paying Providers' fraudulent claims and paying itself Hidden Fees based on those claims.

106.    Over time, the Hidden Fees escalated exponentially.

18

107. Meanwhile, Cigna representatives attended over ten meetings with the Board to review expenses and Plan experience.

108. Not once during those meetings did Cigna reference the massive rise in Hidden Fees.

109. Cigna provided reporting to the Plan's benefit consultant regarding claims experience.

110. The dollar amounts Cigna reported to the consultant as *claims paid to providers* also included the Hidden Fees *kept by Cigna*, but were not noted as such anywhere in those reports.

111. Cigna also provided reports for meetings it did not attend.

112. Nowhere in those reports did Cigna reference the millions of dollars in Hidden Fees Cigna paid itself out of the Plan's assets.

113. Despite repeated requests from the Plan's benefits consultant for more detailed numbers on all cost containment services in preparation for the May 31, 2019 meeting of the Board, no details were provided before or at that meeting.

114. Instead of acknowledging and providing information in response to repeated requests for detailed numbers on all cost containment services, Cigna actively stonewalled any and all attempted inquiries into its illegal conduct.

115. The Hidden Fees were masked as claims expenses and went unreported as compensation to Cigna.

116. The Hidden Fees were collected by Cigna and paid to itself from Plan Assets.

117.   Cigna willfully disregarded its duties as a Plan fiduciary in favor of its own interests.

118.   Through Cigna's access website, the Plan's benefit consultant and administrative office have access to certain reports detailing claims expenses for the Plan.

119.   The Hidden Fees paid to Cigna were not disclosed in these reports.

120.   In fact, the Hidden Fees paid to Cigna are not described in any reports that are available through that website.

121.   Instead, Cigna misrepresented its compensation to the Board as being much lower than it actually was.

**E.**   **Plaintiff Discovers the Hidden Fees and Attempts to Stop Cigna's Theft, but Cigna Continues Paying Itself Exorbitant Fees, Further Damaging Plaintiff and the Plan.**

122.   In March 2019, Cigna was asked for specific reporting on "cost containment services" through which the Board first became aware of the Hidden Fees.

123.   This revealed that Cigna received $550,749 in fees for cost containment services in 2016; $1.2 million in 2017; $1.8 million in 2018; and $2.6 million in 2019.

124.   Cigna's fees for its so-called "cost containment program" have increased from roughly $34.50 per member, per month ("PMPM") in 2016, to $75 PMPM for 2017, to $112 PMPM for the first quarter of 2019: approximately 350 percent over three years.

125.   These fees are many, many times the market rate for out-of-network claims administration, violate Plan terms, and are indefensible under any circumstance.

20

126.    A review of the marketplace has shown that other service administrators provide similar services at around $15 PMPM.

127.    When Plaintiff first became aware of the Hidden Fees, the Plan's benefits consultant asked what Cigna would charge for cost containment services on a PMPM basis.

128.    Cigna representatives initially suggested $10 PMPM, but later tentatively offered $25 PEPM.

129.    Even using the $25 PMPM figure, which is above market and thus not reasonable, Cigna has been overcompensated by at least $2.8 million between 2016 and March of 2019.

130.    The Board did not have, and still does not have, complete and actual knowledge of the fees and expenses being charged to the Plan.

131.    Because Cigna failed and refused to provide the Plan and Board with information, and affirmatively concealed information from them, the Board has lacked the information necessary to understand and protect its interests in the Plan or to have full knowledge of Cigna's breaches of fiduciary duties.

132.    Cigna had an affirmative obligation to provide full and accurate information to the Board and Plan regarding its administration of the Plan.

133.    Cigna's silence and/or non-disclosure in the face of such duty to disclose is equivalent to an affirmative misrepresentation.

134.    In sum, Cigna has refused to justify any of the Hidden Fees by providing detailed information from the claims.

135.   The only reasonable explanation for the irregularities in claims data is Cigna's refusal to provide detailed information and Cigna's breaches of its fiduciary duties.

136.   Plaintiff trusted and believed that Cigna was acting in the Plan's best interests. As explained above, Plaintiff was wrong.

## COUNT I
## BREACH OF FIDUCIARY DUTY - ERISA

137.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

138.   At all times relevant, Cigna was a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) with respect to the Plan because (1) it exercised discretionary authority and control over management of the Plan; (2) it exercised authority and control over management and disposition of Plan Assets; and/or (3) it had discretionary authority and responsibility in the administration of the Plan.

139.   As a fiduciary, Cigna was required, among other things, to

(a)   Conduct itself as administrator with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent ERISA professional fiduciary would in administering the Plan;

(b)   Discharge its duties with utmost loyalty and fidelity to the Plan and its participants and solely in the interest of the employees and beneficiaries of the Plan, avoiding at all times conflicts of interest, self-interest, and duplicity;

(c)   Preserve Plan Assets for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;

(d)    Track, account for, and fully disclose all transactions involving the Plan and Plan assets so as to ensure that Plan assets are retained, managed, and disbursed in compliance with the Plan documents and ERISA;

(e)    Avoid making false or misleading statements, and abide by any statutory and contractual obligations or restrictions imposed on it;

(f)    Ensure that the fees and expenses incurred by the Plan are reasonable and incurred for the sole and exclusive benefit of Plan participants and beneficiaries;

(g)    In entering into agreements with service providers to the Plan, to ensure that the payments from the Plan, whether they are direct or indirect, are reasonable for the services provided and made for the sole and exclusive benefit of Plan participants and beneficiaries;

(h)    In operating and administering the Plan, on an ongoing basis to monitor the payments made by the Plan to service providers, whether they are direct or indirect, to ensure they are and remain reasonable for the services provided and made for the sole and exclusive benefit of Plan participants and beneficiaries;

(i)    Upon request, to provide further information to Plan participants, beneficiaries, and fiduciaries regarding the administration of the Plan and the expenses incurred in doing so; and

(j)    To provide honest, accurate, and complete information to Plan participants, beneficiaries, and fiduciaries regarding the costs associated with their various benefit choices and directions.

140.    Cigna breached its fiduciary duties in numerous ways, including, but not limited to:

(a)    Charging Hidden Fees;

(b)    Failing to disclose, and affirmatively concealing, the Hidden Fees;

(c)    Submitting false and misleading reports;

(d)    Intentionally and knowingly paying grossly inflated and knowingly fraudulent healthcare claims, as well as other improper payments as set forth above;

(e)   Maximizing Cigna's own profits, profits to affiliates, and profits to third parties, at the expense of the Plan, the Plan Sponsor, and Plan participants and beneficiaries;

(f)   Negotiating Cigna's contracts based on disloyal and self-interested factors and making decisions under those contracts without putting the interests of the Plan, and Plan participants and beneficiaries first;

(g)   Failing to stop injuries to the Board and Plan caused by Cigna's co-fiduciaries and service providers;

(h)   Failing to monitor Cigna's appointees, formal delegees, and informal delegees in the performance of their fiduciary duties;

(i)   Failing to disclose to the Board and the Plan, and concealing from them, its payment of fraudulent and improper claims;

(j)   Failing to exercise the care, skill, prudence, and diligence under the circumstances that a prudent fiduciary acting in a like capacity and familiar with such matters would use in paying for healthcare claims;

(k)   Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Plaintiff and the Plan into paying more for healthcare claims than Plaintiff and the Plan were obligated to pay.

141.   Cigna's breaches of its fiduciary duties have proximately caused substantial damages to Plaintiff and the Plan.

142.   Cigna fraudulently concealed that it was charging the Hidden Fees, the amount of those fees, and that it was otherwise violating its legal obligations to Plaintiff and the Plan.

143.   Accordingly, Plaintiff respectfully requests that this Court enter judgment in its favor and against Cigna as follows:

A.   Ordering Cigna to provide a full and complete accounting of all claims, fees, and charges related to administration of the Plan;

24

B.     Declaring that Cigna breached its fiduciary duty and otherwise violated federal law by (1) charging the Hidden Fees; (2) failing to disclose or report the Hidden Fees; (3) grossly mismanaging the Plan's assets, (4) not exercising the care, skill, prudence, and diligence under the circumstances that a prudent fiduciary acting in a like capacity and familiar with such matters would use in paying for healthcare claims, (5) not making decisions, regarding Plan Assets, with an eye single to the interests of the participants and beneficiaries, and (6) failing to disclose, and actively concealing, its payment of fraudulent claims;

C.     Awarding restitution to the Plan;

D.     Awarding monetary damages and disgorgement of Cigna's profits;

E.     Awarding costs, interest, and attorneys' fees (including statutory attorneys' fees under ERISA § 502(g)(1), 29 U.S.C. 1132(g)(1)) to the fullest extent of the law; and

F.     Awarding all other relief to which Plaintiff may be entitled.

**COUNT II**
**PROHIBITED TRANSACTION UNDER ERISA**

144.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

145.   Cigna is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) and a "party in interest" pursuant to 29 U.S.C. § 1002(14).

146.   As a fiduciary and party in interest, Cigna was prohibited from engaging in certain transactions as set forth in 29 U.S.C. § 1106.

147.   Cigna's conduct with respect to the Hidden Fees was a prohibited transaction because, among other things, (a) it constituted a transfer to, or use by or for the benefit of, Cigna of Plan Assets, and (b) Cigna dealt with Plan Assets in its own interest and for its own account.

148.   Cigna's violation of 29 U.S.C. § 1106 has proximately caused substantial damages to Plaintiff and the Plan.

149.   Cigna fraudulently concealed that it was charging the Hidden Fees, the amount of those fees, and that it was otherwise violating its legal obligations to Plaintiff.

150.   Plaintiff did not discover the full extent of Cigna's wrongful conduct until 2019.

151.   Accordingly, Plaintiff respectfully requests that this Court enter judgment in its favor and against Cigna as follows:

A.   Ordering Cigna to provide a full and complete accounting of all claims, fees, and charges related to administration of the Plan;

B.   Declaring that Cigna breached its fiduciary duty and otherwise violated federal law by (1) charging the Hidden Fees; (2) failing to disclose or report the Hidden Fees; (3) grossly mismanaging the Plan's assets, (4) not exercising the care, skill, prudence, and diligence under the circumstances that a prudent fiduciary acting in a like capacity and familiar with such matters would use in paying for healthcare claims, (5) not making decisions, regarding Plan Assets, with an eye single to the interests of the

Plan, and (6) failing to disclose, and actively concealing, its payment of fraudulent claims;

      C.     Awarding restitution to the Plan;

      D.     Awarding monetary damages and disgorgement of Cigna's profits;

      E.     Awarding attorneys' fees (including statutory attorneys' fees under ERISA § 502(g)(1), 29 U.S.C. 1132(g)(1)) to the fullest extent of the law; and

      F.     Awarding all other relief to which Plaintiff may be entitled.

Respectfully submitted,

RYAN, RAPP, UNDERWOOD & PACHECO

Dated:  June 24, 2020     By:    /s/ J. Kenneth Kelley
             J. Kenneth Kelley
             State Bar No. 030183
             Attorneys for Plaintiff
             3200 N. Central Ave., Suite 2250
             Phoenix, AZ 85012
             kkelley@rrulaw.com
             (602) 280-1000

VARNUM LLP

Perrin Rynders (motion for pro hac vice admission pending)
Aaron M. Phelps (motion for pro hac vice admission pending)
Herman D. Hofman (motion for pro hac vice admission pending)
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
prynders@varnumlaw.com
amphelps@varnumlaw.com
hdhofman@varnumlaw.com

27