1  John C. West (Bar No.: 007233)
2  LEWIS ROCA ROTHGERBER CHRISTIE LLP
   201 East Washington Street, Suite 1200
3  Phoenix, Arizona 85004-2595
   (602) 262-5781
4

5  Joshua B. Simon*
   Warren Haskel*
6  Dmitriy Tishyevich*
7  Richard W. Nicholson, Jr.*
   MCDERMOTT WILL & EMERY LLP
8  340 Madison Avenue
9  New York, New York 10173-1922
   (212) 547- 5400
10 *pro hac vice

11

12 *Counsel for Defendant Cigna Health*
   *and Life Insurance Company*
13

14             **IN THE UNITED STATES DISTRICT COURT**

15                **FOR THE DISTRICT OF ARIZONA**

16

17 Board of Trustees of IBEW Local No.        Case No. CV-20-01260-PHX-MTL
   640 and Arizona Chapter NECA Health
18 and Welfare Trust Fund, as fiduciary of
   its welfare benefit Plan,
19
                  Plaintiff,
20                                            **DEFENDANT CIGNA HEALTH
           v.                                 AND LIFE INSURANCE
21                                            COMPANY'S MOTION TO
   CIGNA Health and Life Insurance           DISMISS AND COMPEL
22 Company,                                   ARBITRATION**

23                Defendant.

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

1

2

3

4

5

6

7

8

9

10

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

       A.    The Parties. ............................................................................... 2

       B.    The ASO Agreement. ............................................................... 2

       C.    The Agreement's Mandatory Arbitration Provision. ................ 3

       D.    The Parties' Pre-Lawsuit Attempts to Resolve the Dispute. ........... 4

       E.    The Board's Claims. ................................................................. 6

ARGUMENT ........................................................................................................... 6

    I.    The Court Should Enforce the Arbitration Provision and Dismiss this Lawsuit. ................................................................................ 6

       A.    The FAA Applies to the Arbitration Provision in the ASO Agreement. .............................................................................. 6

       B.    The FAA Reflects a Strong Federal Policy in Favor of Arbitration. ............................................................................... 7

       C.    The Arbitration Clause Is Enforceable and It Covers this Lawsuit. 8

CONCLUSION ...................................................................................................... 12

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4  *Altela Inc. v. Ariz. Sci. & Tech. Enterprises LLC*,

5      2016 WL 4539949 (D. Ariz. Aug. 31, 2016) ...................................................... 10, 11

6  *AT&T Mobility LLC v. Concepcion*,

7      563 U.S. 333 (2011)...................................................................................................7

8  *Chappel v. Lab. Corp. of Am.*,

9      232 F.3d 719 (9th Cir. 2000) ..................................................................................10

10  *Coup v. Scottsdale Plaza Resort, LLC*,

11      823 F. Supp. 2d 931 (D. Ariz. 2011) ........................................................................8

12  *Dean Witter Reynolds, Inc. v. Byrd*,

13      470 U.S. 213 (1985)...................................................................................................7

14  *Dorman v. Charles Schwab Corp.*,

15      780 F. App'x 510 (9th Cir. 2019)..............................................................................9

16  *Epic Sys. Corp. v. Lewis*,

17      138 S. Ct. 1612 (2018)...............................................................................................8

18  *J-Hanna v. Tucson Dodge Inc.*,

19      2011 WL 4625759 (D. Ariz. Oct. 5, 2011) ...............................................................9

20  *Kam-Ko Bio–Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*,

21      560 F.3d 935 (9th Cir. 2009) .....................................................................................7

22  *Martin v. Yasuda*,

23      829 F.3d 1118 (9th Cir. 2016) .................................................................................10

24  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

25      460 U.S. 1 (1983).......................................................................................................7

26  *Richards v. Ernst & Young, LLP*,

27      744 F.3d 1072 (9th Cir. 2013) .................................................................................11

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

1  *Samson v. NAMA Holdings, LLC*,

2      637 F.3d 915 (9th Cir. 2011) ....................................................................................... 7

3  *Shields v. Frontier Tech., LLC.*,

4      2011 WL 13070409 (D. Ariz. Nov. 30, 2011) ....................................................... 6, 8

5  *Todd Shipyards Corp. v. Cunard Line, Ltd.*,

6      943 F.2d 1056 (9th Cir. 1991) ..................................................................................... 9

7  *Trujillo v. Gomez*,

8      2015 WL 1757870 (S.D. Cal. Apr. 17, 2015) ......................................................... 11

9  *Van Ness Townhouses v. Mar Indus. Corp.*,

10     862 F.2d 754 (9th Cir. 1988) ..................................................................................... 10

11 *W. Chance No. 2, Inc. v. KFC Corp.*,

12     734 F. Supp. 1529 (D. Ariz. 1990), *aff'd in part, rev'd in par*t, 957 F.2d 1538 (9th

13     Cir. 1992) ...................................................................................................................... 8

14 *Wailua Assocs. v. Aetna Cas. And Sur Co.*,

15     904 F. Supp. 1142 (D. Haw. 1995).............................................................................. 6

16 **Statutes**

17 9 U.S.C. § 2................................................................................................................. 6, 8

18 9 U.S.C. § 4.................................................................................................................... 7

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

# **INTRODUCTION**[1]

This case belongs in arbitration and should be dismissed. Plaintiff Board of Trustees of IBEW Local No 640 and Arizona Chapter NECA Health & Welfare Trust Fund (the "Board") asserts claims on behalf of its welfare benefit plan (the "Plan") against Cigna Health and Life Insurance Company ("Cigna"). Specifically, the Board disputes Cigna's calculation of certain cost-containment fees that Cigna charged the Plan pursuant to the terms of the parties' Administrative Services Only Agreement (the "ASO Agreement"), under which Cigna administers the Plan's claims. The Board is wrong on the merits because Cigna's calculations of those fees were in fact squarely in accordance with the ASO Agreement. But for purposes of this motion that does not matter, because the ASO Agreement requires parties to arbitrate "***any dispute*** . . . arising from or relating to the performance or interpretation" of that contract, which means that this is a dispute for an arbitrator—not this Court. This Court should follow the Federal Arbitration Act's strong policy in favor of enforcing arbitration provisions, and it should compel arbitration accordingly.

Nothing that the Board may argue in response changes this straightforward analysis. For example, the Board is plainly trying to plead around the arbitration provisions by failing to mention the ASO Agreement in its Complaint at all. But because the ASO Agreement sets forth the terms of Cigna's cost-containment fees that the Board is now challenging, this is plainly a dispute over the "performance or interpretation" of the contract, and is thus subject to its arbitration provision. Next, the Board's attempt to avoid this outcome by pleading its claims under ERISA rather than as a breach of contract is likewise unavailing, since ERISA claims are just as arbitrable as breach of contract claims. And finally, to the extent the Board may argue that Cigna somehow waived its right to arbitrate, that would fail too:  Cigna is filing this motion to compel

---

[1] For the purposes of this brief, "Cigna" means Cigna Health and Life Insurance Company. References to "Complaint" or "Compl." are to the Complaint, Dkt. 1.  Unless otherwise noted, all emphasis has been added, and all internal quotation marks, citations, and ellipses have been omitted.

1    arbitration at the earliest possible opportunity, and Cigna has never consented to litigate

2    this dispute in court. Accordingly, Cigna respectfully requests that the Court dismiss

3    this matter, and compel arbitration.

4                              **STATEMENT OF FACTS**

5        **A.      The Parties.**

6        Plaintiff is the Board of Trustees of the Arizona Chapter of NECA and the IBEW

7    Local No. 640, which created the IBEW Local No. 640 and Arizona Chapter NECA

8    Health and Welfare Trust Fund (the "Fund"). (Compl. ¶¶ 1-2.) The Board for the Fund

9    adopted and sponsors the Plan, which offers health benefits to union members who are

10   employed by members of the Arizona Chapter of NECA. (*Id.* ¶¶ 4-6.) The Board alleges

11   it is the Plan's fiduciary, plan sponsor and plan administrator, and that its principal place

12   of business is in Phoenix, Arizona. (*Id.* ¶ 1.)

13       Cigna is a corporation organized under the laws of Connecticut, with its principal

14   place of business in Bloomfield, Connecticut. (*Id.* ¶ 10.) Cigna provides healthcare

15   insurance and administers claims for both employer-sponsored benefit plans and

16   individual health benefit plans. (*Id.* ¶ 11.)

17       **B.      The ASO Agreement.**

18       For employer-sponsored plans, like the Fund's Plan here, Cigna enters into

19   agreements called "Administrative Services Only" ("ASO") agreements. These ASO

20   agreements set forth the terms for services that Cigna will provide to the plan, as well

21   as the fees Cigna will collect for those services. Cigna and the Fund entered into an

22   ASO Agreement on July 1, 2015. (Declaration of Brett Boskiewicz ("Boskiewicz

23   Declaration"), ¶ 3, Ex. A).

24       The ASO Agreement governs the relationship of Cigna and the Fund. The ASO

25   Agreement memorializes the claims administration services that Cigna will provide to

26   administer health benefit claims submitted on behalf of Plan members, and the Fund's

27   delegation to Cigna of "the authority, responsibility and discretion to determine

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
NEW YORK

1    coverage under the Plan." (*Id.* at 4). The ASO Agreement also states that Cigna, as an

2    agent for the Fund, shall make payments from a bank account established and

3    maintained by the Fund. (*Id.* at 5.) The Agreement also authorizes Cigna to make

4    payments that it reasonably determines are proper under the Plan and the Agreement,

5    including paying plan benefits and fees and charges owed to Cigna, Cigna's affiliates,

6    or contracted third parties. (*Id.* at 5.) Those fees are disclosed in Schedule of Financial

7    Charges appended and incorporated by the Agreement. (*Id.* at 13.)  Included in the

8    Schedule of Financial Charges are fees relating to Cigna's "cost-containment"

9    programs, which are a suite of services meant to control plan sponsors' spend on claims

10   from out-of-network ("OON") providers. (*Id.* at 19-20). The Schedule of Financial

11   Charges describes the fees associated with each containment program, how those fees

12   are calculated (typically a percentage of the savings achieved for the Plan), and when

13   Cigna will and will not collect those fees. (*Id.*)

14           **C.      The Agreement's Mandatory Arbitration Provision.**

15           The ASO Agreement also contains a dispute resolution provision, which states

16   that:

17                   It is understood and agreed that any dispute between the Parties
             arising from or relating to the performance or interpretation of this
             Agreement ("Controversy") shall be resolved exclusively pursuant to the
18           following mandatory dispute resolution procedures . . .

19           (*Id.* at 8.) The procedures outlined in the ASO Agreement first contemplate an

20   "Executive Review," whereby each party refers the dispute to an executive-level

21   employee for informal resolution. (*Id.* at 8-9). If the dispute is not resolved within 35

22   days of the request for Executive Review, "the disputing Party shall initiate mediation

23   by providing written notice to the other party." (*Id.* at 9) And "[i]n the event that a

24   Controversy has not been resolved by Executive Review or Mediation, the Controversy

25   shall be settled by binding arbitration."  (*Id.*) The Agreement is clear that this dispute

26   resolution process—including arbitration if mediation is unsuccessful—is the ***sole***

27   mechanism to resolve the parties' disputes over the interpretation or performance of the

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

3

1  contract, as it states that "no action at law or in equity may be instituted by either Party

2  other than to enforce the award of the arbitrator." (*Id.*)

3            **D.**        **The Parties' Pre-Lawsuit Attempts to Resolve the Dispute.**

4         The Board first raised concerns about Cigna's calculation of cost containment

5  fees in the lead up to a meeting on May 31, 2020. (*See* Boskiewicz Decl. ¶ 4, Ex. B,

6  June 25, 2020 Letter by Jennifer Monahan to the Board, at 6.) Even before that meeting,

7  Cigna had explained to the Board multiple times that the Plan's benefit design was

8  driving unusually high out-of-network utilization and claims volume. (*Id.* at 4-5.) The

9  Plan defaulted to a narrow-network LocalPlus option with in-network doctors primarily

10  located in Phoenix, Arizona. (*Id.* at 5.) This option was also available to out-of-state

11  residents. (*Id.* at 4.) This combination, which was chosen by the Board and the Plan, led

12  to higher out-of-network utilization and, as a result, higher cost-containment fees for

13  Cigna pursuant to the ASO Agreement. (*Id.* at 4-6.) Nevertheless, Cigna account

14  managers had recommended changes to the Plan that would have reduced out-of-

15  network spend—and Cigna's fees—but the Board did not make those changes. (*Id.*) At

16  the May 31st meeting, the Board asked Cigna to refund all cost containment fees that

17  Cigna had collected over multiple years. (*Id.* at 6.) Cigna disagreed, because it had

18  calculated its cost-containment fees in accordance with the ASO agreement and thus

19  did not believe refund was warranted. (*Id.*) In any event, Cigna turned off most of its

20  cost-containments programs going forward in response to the Board's wishes, thereby

21  forgoing most of its future fees. (*Id.*)

22         Over the second half of 2019, the parties then attempted to resolve the dispute

23  both informally through meetings between business principals, and later through in-

24  house counsel. (Boskiewicz Decl. ¶ 5.) As shown in the below timeline, the Board

25  initiated but ultimately abandoned the mandatory dispute resolution process set forth in

26  the ASO Agreement, by mentioning the prospect of proceeding to mediation but never

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

formally scheduling it, and instead filing this lawsuit over six months after the parties' talks ended. (Boskiewicz Decl. ¶¶ 6-13.)

- **October 2, 2019**: the Board's Attorney, Kenny Kelly, sent a letter to Cigna providing notice of the dispute and requesting Executive Review per Section 12 of the Agreement. (Boskiewicz Decl. ¶ 6, Ex. C.)

- **October 22, 2019**: Cigna in-house counsel, Brett Boskiewicz, provided a written response and explained Cigna's position, in compliance with Section 12 of the Agreement. (Boskiewicz Decl. ¶ 7, Ex. D.)

- **October 30, 2019**: Mr. Kelly sent a letter to Mr. Boskiewicz suggesting that since the dispute was unlikely to be resolved within 35 days of the request for Executive Review (November 6), the parties skip directly to mediation. (Boskiewicz Decl. ¶ 8, Ex. E, Kelly Letter.) Mr. Kelly also requested certain claims data from Cigna. (*Id.*)

- **November 7, 2019**: After the 35-day period expired, Mr. Kelly sent a letter to Mr. Boskiewicz giving notice of the Fund's intent to initiate mediation per Section 12 of the Agreement and again requesting claims data. (Boskiewicz Decl. ¶ 9, Ex. F.) Mr. Kelly did not provide any further details about the mediation.

- **November 21, 2019**: Mr. Boskiewicz left a voicemail with the Mr. Kelly, explaining that Cigna had been working to prepare the requested data and requesting to speak further about the dispute. (Boskiewicz Decl. ¶ 10.)

- **December 19, 2019**: After an extensive effort to gather and prepare the requested data, Cigna delivered it to the Fund. (Boskiewicz Decl. ¶ 11.) Mr. Boskiewicz and Mr. Kelly exchanged emails about the data and sought to discuss the matter over the phone. (*Id.*) However, the Fund did not take any further steps to formally schedule a mediation. (*Id.*)

- **January 14, 2020**: the Fund provided notice that it is terminating its relationship with Cigna, effective May 1, 2020. (Boskiewicz Decl. ¶ 12.)

- **June 25, 2020**: The Board filed this lawsuit on behalf of the Fund and the Plan. (Boskiewicz Decl. ¶ 13.)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

5

**E.      The Board's Claims.**

The Board asserts that Cigna improperly calculated its cost-containment fees, and based on those allegations, it asserts a breach of fiduciary duty claim under ERISA § 503(a)(3) and a prohibited transaction claim under ERISA § 406. (Compl. ¶¶ 137-143.)  The Board's allegations are baseless. As Cigna repeatedly explained to the Board before this lawsuit, Cigna's calculations of cost-containment fees were appropriate and consistent with the terms of the ASO Agreement. In any event, that will be a dispute for an arbitrator—not this Court—to resolve.

# ARGUMENT

## I.      The Court Should Enforce the Arbitration Provision and Dismiss this Lawsuit.

All of the Board's claims arise out of Cigna's performance of the ASO Agreement. These claims are subject to mandatory and binding arbitration pursuant to Section 12 of the ASO Agreement. Accordingly, the Court should dismiss this action and compel arbitration.

### A.      The FAA Applies to the Arbitration Provision in the ASO Agreement.

The FAA applies to any written agreement to arbitrate "a contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. Such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* Unless a contract specifically disclaims the FAA—and the ASO Agreement does not do so (see Boskiewicz Decl., Ex. A, at 8-9)— the FAA will govern a contract's arbitration clause. *Shields v. Frontier Tech., LLC.*, 2011 WL 13070409, at \*4 (D. Ariz. Nov. 30, 2011) (quoting *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984)) (courts "ordinarily will not except a controversy from coverage of a valid arbitration clause unless it may be said

1   with positive assurance that the arbitration clause is not susceptible of an interpretation

2   that covers the asserted dispute").

3       Here, there can be no dispute that the ASO Agreement involves interstate

4   commerce. The Board has its principal place of business in Phoenix, Arizona, and Cigna

5   has its principal place of business in Bloomfield, Connecticut. (Statement of Facts

6   ("SOF"), *supra*, at 2.) The Board hired Cigna, a non-Arizona entity, to manage its health

7   benefit claims, including for claims that arose outside of Arizona. (SOF, *supra*, at 2-3.)

8   This is enough to show interstate commerce under the FAA. *Wailua Assocs. v. Aetna*

9   *Cas. And Sur Co.*, 904 F. Supp. 1142, 1147, n.2 (D. Haw. 1995) ("The United States

10  Supreme Court has long recognized that the word 'commerce' as used in the Commerce

11  Clause includes insurance."). Therefore, the FAA applies to the arbitration provision in

12  Section 12 of the ASO Agreement.

13      **B.      The FAA Reflects a Strong Federal Policy in Favor of Arbitration.**

14      The FAA "reflects a liberal federal policy favoring arbitration." *AT&T Mobility*

15  *LLC v. Concepcion*, 563 U.S. 333, 339 (2011). It also reflects the "clear intent" of

16  Congress "to move the parties to an arbitrable dispute out of court and into arbitration

17  as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

18  *Corp.*, 460 U.S. 1, 22 (1983); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

19  213, 221 (1985) (the FAA requires that courts "rigorously enforce agreements to

20  arbitrate").

21      "By its terms, the [FAA] leaves no place for the exercise of discretion by a district

22  court, but instead mandates that district courts shall direct the parties to proceed to

23  arbitration on issues as to which an arbitration agreement has been signed." *Samson v.*

24  *NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011). Thus, "any doubts concerning

25  the scope of arbitrable issues should be resolved in favor of arbitration, whether the

26  problem" is construction of the contract language, "an allegation of waiver," or a

27  "defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

**C.      The Arbitration Clause Is Enforceable and It Covers this Lawsuit.**

When the FAA applies to a written arbitration agreement, as it does here, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam-Ko Bio–Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009). Given the strong presumption in favor of arbitration under the FAA, "[t]he district court's role is limited to determining [1] whether a valid arbitration agreement exists and, if so, [2] whether the agreement encompasses the dispute at issue." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 940 (D. Ariz. 2011) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir.2004).)  Here, "the answer is "yes" to both questions," and therefore "the court must enforce the agreement." *See id.*

First, the arbitration provision is valid and enforceable. In undertaking this analysis, courts apply general state-law principles of contract interpretation "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Shields*, 2011 WL 13070409, at \*3 (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). The FAA's savings clause (9 U.S.C. § 2) only permits arbitration clauses to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting *AT&T*, 563 U.S. at 339).

None of these contractual defenses apply here. The ASO Agreement was negotiated by sophisticated parties, and both the Fund and Cigna knew and agreed to the arbitration provision. *See W. Chance No. 2, Inc. v. KFC Corp.*, 734 F. Supp. 1529,

1    1541 (D. Ariz. 1990), *aff'd in part, rev'd in par*t, 957 F.2d 1538 (9th Cir. 1992)

2    (dismissing breach of contract claim and finding terms were not unconscionable nor

3    was bargaining process inequitable because parties were sophisticated). There is no

4    basis for the Board to argue that the arbitration agreement should be set aside because

5    of fraud, duress, or unconscionability, and there are no allegations in the Complaint to

6    even suggest that any such defenses may apply.

7        Second, this dispute is plainly within the scope of the arbitration provision, which

8    applies to "[a]ny dispute between the Parties arising from or relating to the performance

9    or interpretation of this Agreement." (*See* SOF *supra* at 3). This is a prime example of

10   a "broad" arbitration provisions that reaches any dispute that relates to the contract at

11   issue. *See, e.g.*, *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1060 (9th

12   Cir. 1991) (a provision stating that "[a]ny and every dispute, difference or question . . .

13   relating to this Agreement" is an "expansive arbitration provision"); *J-Hanna v. Tucson*

14   *Dodge Inc.*, 2011 WL 4625759, at \*9 (D. Ariz. Oct. 5, 2011) (such broad arbitration

15   provisions "reach[] every dispute between the parties having a significant relationship

16   to the contract and all disputes having their origin or genesis in the contract").

17       Here, all of the Fund's claims stem from Cigna's duties, obligations, and

18   performance of the ASO Agreement. The crux of the Fund's complaint is that "Cigna

19   charged fees for negotiating payments to non-participating providers, ('Providers') as a

20   so-called 'cost containment service'" and that "[i]nstead of paying itself fees at or near

21   market rates, Cigna grossly overpaid itself fees exceeding those rates, under the guise

22   of a 'savings' compensation structure, to cloak blatant misappropriation of funds."

23   (Compl. ¶¶ 61-62). While the Board is wrong on the merits, what matters for purposes

24   of this motion is that this is plainly a dispute related to the ASO Agreement, which sets

25   forth the circumstances in which Cigna may obtain cost-saving fees and in what

26   amounts. (SOF *supra* at 2-4.)  Indeed, without the ASO Agreement, there would be no

27   contractual basis for Cigna to charge these cost-containment fees in the first place. Thus,

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

1    there can be no question that resolving this dispute requires reference to the ASO

2    Agreement, which places this lawsuit squarely within the scope of the agreement's

3    arbitration provision.

4        Nor does it matter that the Board decided to package its allegations as ERISA

5    claims rather than breach of contract claims. As the Ninth Circuit recently confirmed,

6    consistent with every other circuit, the FAA does not exempt ERISA claims from

7    arbitration. *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir.

8    2019) (enforcing arbitration provision to compel arbitration of claim for ERISA breach

9    of fiduciary duty, and noting that "[a]s every circuit to consider the question has held,

10   ERISA contains no congressional command against arbitration, therefore an agreement

11   to arbitrate ERISA claims is generally enforceable."); *see also Chappel v. Lab. Corp.*

12   *of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (arbitration clauses in ERISA plans are

13   entitled to a "presumption of arbitrability" under the FAA).

14       Finally, Cigna anticipates that Plaintiff may argue that Cigna somehow waived

15   its right to arbitrate because the parties did not complete the mediation process

16   contemplated by the ASO Agreement. This is baseless.

17       To start, waiver of the right to arbitrate is disfavored, and the party arguing waiver

18   thus bears a "heavy burden" of proof. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir.

19   2016) ("A determination of whether 'the right to compel arbitration has been waived

20   must be conducted in light of the strong federal policy favoring enforcement of

21   arbitration agreements.'"). Plaintiff cannot meet that heavy burden here because it will

22   not be able to show at least two elements of waiver:  (1) acts inconsistent with the right

23   to arbitrate; and (2) prejudice to opposing party as a result of such acts. *See, e.g.*, *Altela*

24   *Inc. v. Ariz. Sci. & Tech. Enterprises LLC*, 2016 WL 4539949, at *5 (D. Ariz. Aug. 31,

25   2016) (citing *Martin*, 2016 WL 3924381, at *5).

26       Given the heavy burden to show waiver, courts typically find these elements met

27   only when a party actively proceeds with litigation on the merits, and then belatedly

28

1    moves to compel arbitration—often after getting a setback on the merits. *See, e.g.*,

2    *Martin*, 829 F.3d at 1125 (denying motion to compel because defendant litigated the

3    case for seventeen months, filing and losing a motion to dismiss on the key merits issue,

4    entering into a protective order, answering discovery, and conducting depositions); *Van*

5    *Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding

6    prejudice where defendant actively litigated the dispute through pleadings, motion to

7    dismiss, and a pre-trial conference order).

8         Nothing like that has happened here. Instead, Cigna is filing this motion to

9    compel arbitration at the earliest possible opportunity, and Cigna has taken no actions

10   whatsoever inconsistent with its right to arbitrate. And because this litigation has not

11   yet started in earnest, the Board cannot show any conceivable prejudice. *See, e.g.*,

12   *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 (9th Cir. 2013) (finding that

13   defendant had not gained any information about the plaintiff's case through discovery

14   to use to its advantage in arbitration).

15        To the extent the Board may argue that Cigna waived its right to arbitrate by

16   failing to complete the mediation process, that fails too. Not only is this argument

17   factually wrong since it was the Board and not Cigna that abandoned mediation (*see*

18   SOF *supra* at 5), but a failure to mediate in any event does not waive the right to

19   arbitrate. *Altela*, 2016 WL 4539949, at *6 & n.4 (failure to mediate does not constitute

20   waiver of right to arbitrate, because when mediation was requested the right to

21   arbitration did not yet exist). And even if the Court were to find that mediation here is

22   a condition precedent that has not been satisfied (which Cigna disputes), the appropriate

23   remedy is still to dismiss, so that the parties can complete the pre-arbitration process

24   and ***then*** proceed to arbitration. *Trujillo v. Gomez*, 2015 WL 1757870, at *9 (S.D. Cal.

25   Apr. 17, 2015) (dismissing and granting the defendant's motion to compel arbitration,

26   despite a required mediation clause, because the court had no authority to compel non-

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

binding mediation under the FAA). So no matter how the Board tries to spin it, it cannot avoid the mandatory arbitration provision of the ASO Agreement.

## **CONCLUSION**

For the reasons set forth above, Cigna requests that the Court issue an order compelling the parties to arbitrate this dispute, and dismiss this case.

Dated:  September 14, 2020                    Respectfully submitted,

/s/ John C. West
John C. West (Bar No.: 007233)
Lewis Roca Rothgerber Christie LLP
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595
(602) 262-5781

Joshua B. Simon*
Warren Haskel*
Dmitriy Tishyevich*
Richard W. Nicholson, Jr.*
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173-1922
(212) 547- 5400
* pro hac vice

Counsel for Defendant Cigna Health and Life Insurance Company

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
NEW YORK

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a notice of Electronic Filing to the following CM/ECF registrants:

J. Kenneth Kelley – kkelley@rrulaw.com

Perrin Rynders – prynders@varnumlaw.com

Aaron M. Phelps – amphelps@varnumlaw.com

Herman D. Hofman – hdhofman@varnumlaw.com

By:  *s/Ashly White*