**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Local 640 Trustees of IBEW and Arizona Chapter NECA Health and Welfare Trust Fund, | No. CV-20-01260-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| CIGNA Health and Life Insurance Company, | |
| Defendant. | |

The Board of Trustees of the IBEW Local No. 640 and Arizona Chapter NECA Health and Welfare Trust Fund (the "Board" or the "Fund's Trustees") brings this action as a fiduciary for a welfare benefit plan (the "Plan"). (Doc. 1.) Defendant Cigna Health and Life Insurance Company ("Cigna") has moved to dismiss this case and compel arbitration. (Doc. 25.) Cigna's motion is fully briefed. (Docs. 25, 28, 29.) For the reasons given below, the Court will grant the motion to compel arbitration and dismiss this case.

## I.      BACKGROUND

The International Brotherhood of Electrical Workers, Local No. 640 and the Arizona Chapter of the National Electrical Contractors Association established the IBEW Local No. 640 and Arizona Chapter NECA Health and Welfare Trust Fund (the "Fund"). (Doc. 1 ¶ 2.) The Fund allows employers and unions who are parties to collective bargaining agreements to pool their resources and share the costs of running welfare benefit plans. (*Id.* ¶ 3.) The Fund's Trustees adopted the Plan, which is an employee welfare

benefit plan under § 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.* ¶¶ 4–5.)

Rather than purchase insurance coverage, the Fund's Trustees opted to self-fund the Plan. (*Id.* ¶ 8.) Accordingly, employers, employees, and retirees contribute to the Fund, and that money is then used to pay claims of Plan participants and beneficiaries. (*Id.* ¶¶ 25–26.) The Board, "acting for the Fund as Plan sponsor," executed an Administrative Services Only Agreement ("ASO Agreement" or "Agreement") with Cigna, which is one of the largest health service companies in the country. (*Id.* ¶¶ 12, 39; Doc. 26-1 at 4.) Under the terms of the Agreement, Cigna provided claims administration services to the Plan. (Doc. 1 ¶ 23; Doc. 26-1, Ex. A.) Consistent with the Agreement's terms, Cigna received and reviewed claims for Plan benefits, determined whether benefits were payable, and if so, disbursed payments to healthcare providers using money supplied by the Fund. (Doc. 1 ¶ 33.) In exchange for its services, Cigna received compensation from the Plan. (*Id.* ¶¶ 28, 32.) Because the ASO Agreement grants Cigna the authority to control the Plan's bank account, Cigna paid itself the amounts the Plan allegedly owed. (*Id.*)

Among the terms in the Agreement are mandatory dispute resolution procedures. (Doc. 26-1 at 9–10.) The procedures require "any dispute between the Parties arising from or relating to the performance or interpretation of [the ASO] Agreement" to "first be referred to an executive level employee of each Party who shall meet and confer with his/her counterpart to attempt to resolve the dispute." (*Id.* at 9.) If the dispute is not resolved within 35 days of the request for executive review, "the disputing Party shall initiate mediation." (*Id.* at 10.) If the dispute remains unresolved, it "shall be settled by binding arbitration." (*Id.*) The term "Parties," as used in the Agreement, "refers to [the] Fund and CHLIC [i.e., Cigna], each a 'Party' and collectively, the 'Parties.'" (*Id.* at 4.)

In October 2019, counsel for the Fund and the Fund's Trustees provided Cigna written notice of a dispute and requested executive review under the terms of the ASO Agreement. (Doc. 26-1, Ex. C.) The Fund alleged that Cigna had breached its fiduciary duties under ERISA, breached the ASO Agreement, and engaged in overpayment and self-

dealing. (*Id.* at 11–12.) To establish Cigna owed fiduciary duties under ERISA, the notice explained:

> The Agreement expressly empowers Cigna with *each* individually sufficient discretionary power to establish ERISA fiduciary status. Foremost, Cigna has authority over the Fund's bank account, which is funded with ERISA-regulated monies deposited to pay the health expenses and the administrative costs of the Fund's enrollees. Additionally, the Agreement stipulates Cigna has the authority to "receive and review claims for Plan Benefits," "determine the Plan Benefits, if any, payable for such claims," and "disburse payments of Plan Benefits to claimants." In sum, the Agreement grants Cigna both requisite discretionary powers necessary to find that Cigna is, as a claims administrator for a self-funded plan, an ERISA fiduciary. Cigna has the ability to determine claims and pay claims. Based on this clear reasoning, there can be no dispute that Cigna is an ERISA fiduciary to *the Fund*.

(*Id.* at 11 (footnote omitted) (second emphasis added).) The notice further alleged that Cigna had "pa[id] unreasonable or unnecessary fees," used "inflated and arbitrary billed charges in the calculation of its fees," and "pa[id] itself fees on claims that the Fund ha[d] already been billed for and [were] not supported by the Agreement." (*Id.* at 12–13.) Additionally, the Fund noted that "Cigna's Cost Containment Fees [had] increased from roughly $34.50 [per employee per month ("PEPM")] in 2016, to $75 PEPM for 2017, to $112 PEPM for 2018 and to $122 PEPM for the first quarter of 2019" and argued Cigna "masked" those fees "as a claims expense." (*Id.* at 13–14.) In the Fund's view, Cigna's actions "exacerbate[d] the breach and demonstrate[d] a willful disregard of Cigna's duty as a Plan fiduciary." (*Id.* at 14.)

Cigna responded to the notice, and the Fund then sent Cigna a follow-up letter. (Doc. 27, Exs. D, E.) In its letter, the Fund maintained that "Cigna had a duty, as a fiduciary of *the fund*, to bring [certain] extreme fees to the attention of the trustees" and reasserted that "Cigna has breached its fiduciary duty to *the Fund* and violated the terms of the ASO Agreement." (*Id.*, Ex. E (emphasis added).) "Given the nature of [the] dispute, the amount

1    at issue, and the parties' stated positions," the Fund believed the dispute would not likely

2    be resolved by executive review, and thus the Fund "propose[d] that the parties agree to

3    move directly to the required mediation." (*Id.*)

4         Instead of engaging in mediation, the Fund's Trustees brought this lawsuit. In its

5    Complaint, the Board, "as fiduciary of its welfare benefit Plan," asserts claims for breach

6    of fiduciary duty and prohibited transactions under ERISA. (Doc. 1.) The Complaint

7    alleges that Cigna "charged excessive fees to the Plan," including fees for "a so-called 'cost

8    containment service'" and "[h]idden [f]ees on in-network claims." (*Id.* ¶¶ 60, 61, 78.) The

9    Board alleges that Cigna "processed grossly inflated healthcare claims from [non-

10   participating providers], and then used those inflated claims to calculate the amount of

11   [h]idden [f]ees to pay itself." (*Id.* ¶ 66.) The Complaint also alleges that "Cigna's fees for

12   its so-called 'cost containment program' have increased from roughly $34.50 per member,

13   per month ("PMPM") in 2016, to $75 PMPM for 2017, to $112 PMPM for the first quarter

14   of 2019." (*Id.* ¶ 124.) "These fees," says the Board, "are many, many times the market rate

15   for out-of-network claims administration, violate Plan terms, and are indefensible under

16   any circumstance." (*Id.* ¶ 125.)

17        Relying on the ASO Agreement's arbitration clause, Cigna moves to compel

18   arbitration and dismiss this case. (Doc. 25.) The motion is ripe for ruling. (Docs. 25, 28,

19   29.) The Court ordered supplemental briefing on the Supreme Court's decision in *GE*

20   *Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.

21   Ct. 1637 (2020), which the parties timely submitted. (Docs. 37, 38.) The Court now rules.

22   **II.    LEGAL STANDARD**

23        The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts

24   involving interstate commerce. 9 U.S.C. § 2. By the FAA's terms, arbitration agreements

25   "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or

26   in equity for the revocation of any contract." *Id.* The FAA reflects the federal policy

27   favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

28   24 (1983). The party seeking to compel arbitration bears the initial burden of demonstrating

- 4 -

that a valid agreement exists to arbitrate the claims at issue. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (noting "[t]he [party seeking arbitration] bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence"). If an arbitration clause is valid and enforceable, this Court must stay or dismiss the action to allow the arbitration to proceed. *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA)*, 560 F.3d 935, 940 (9th Cir. 2009). "The party resisting arbitration bears the burden[] of proving that the claims at issue are unsuitable for arbitration." *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1091 (9th Cir. 2018) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Where no conflict between the FAA and the substantive statutory provision exists, the courts involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Munro*, 896 F.3d at 1091 (internal quotations omitted). If the Court answers both questions in the affirmative, the FAA compels the enforcement of the arbitration agreement in accordance with its terms. *Id.*; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "There is no room for discretion[:]" the Act "'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Munro*, 896 F.3d at 1091 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

## III.    DISCUSSION

As an initial matter, the Court addresses whether it has subject-matter jurisdiction over the alleged claims. The Complaint asserts that the Court has federal question jurisdiction and jurisdiction under 29 U.S.C. § 1132(e) "because this action is brought by a fiduciary for relief under ERISA." (Doc. 1 ¶ 14.) That assertion is consistent with the Complaint's opening paragraph, which reads: "The Board of Trustees of IBEW Local No. 640 and Arizona Chapter NECA Health and Welfare Trust Fund . . . , as fiduciary of its

welfare benefit Plan . . . , states as follows for its Complaint against Cigna Health and Life Insurance Company . . . ." (*Id.* at 1.) At odds with those allegations, Plaintiff's counsel seemed to suggest, for the first time at oral argument, that the Plan, itself, is the plaintiff in this case. Unofficial Transcript of Oral Argument at 7, *Loc. 640 Trs. of IBEW & Ariz. Chapter NECA Health & Welfare Tr. Fund v. CIGNA Health & Life Ins. Co.*, CV-20-01260-PHX-MTL (July 30, 2021) (hereinafter "Transcript of Oral Argument"). In response, Cigna's counsel noted that, if the Plan is truly bringing this action on its own behalf, the Plan lacks standing to sue under § 502(a) of ERISA. *Id.* at 25. From the Court's independent research, Cigna appears to be correct. *See Loc. 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 983 (9th Cir. 1999) ("We have previously held that an ERISA plan itself does not have standing to sue under § 502(a) of ERISA because it is not a plan participant, beneficiary or fiduciary."). That being said, the Complaint, which guides this litigation, alleges that the Fund's Trustees—i.e., the Board—are bringing this action on behalf of the Plan. The Complaint alleges the Board is the Plan's fiduciary as defined in Section 402(a)(1) of ERISA. (Doc. 1 ¶ 1.) Thus, the Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

The Court now turns to the merits of Cigna's motion. Cigna argues this matter belongs in arbitration and should be dismissed. (Doc. 25.) The Board opposes the motion on two grounds. (Doc. 28.) First, it argues no arbitration agreement exists between the relevant parties because the Plan "owns the claims raised by the Board," and the Fund, not the Plan, is a party to the ASO Agreement. (*Id.* at 1.) Second, the Board contends that the claims fall beyond the scope of the arbitration provision because it is a "narrow" provision and the alleged claims only concern "Cigna's distinct, preexisting statutory obligations under ERISA." (*Id.* at 2.) Thus, there are two issues before the Court: (1) whether the Plan is bound by the Agreement, and, if so, (2) whether the arbitration clause encompasses the alleged claims. The Court takes the issues in turn.

### A.    Application of the ASO Agreement

The ASO Agreement was executed "b[y] and [b]etween" Cigna and the Fund.

1   (Doc. 26 at 2.) The Board does not challenge the validity of the arbitration clause. Indeed,

2   the Board concedes that the Fund would be required to arbitrate a breach of contract claim

3   against Cigna. Transcript of Oral Argument at 15. The Board, instead, argues that only the

4   Fund, and not the Plan, is bound by the arbitration provision. (Doc. 28 at 6–10.) The Board

5   is correct that the relevant question in this case is whether the Plan is bound to arbitrate.

6   *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513 (9th Cir. 2019) (citing

7   *Munro*, 896 F.3d at 1092). To answer that question, the Court must apply Arizona law.[1]

8   *See Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1331 (9th Cir. 2020) (applying

9   Arizona law to determine whether a particular party was bound by an arbitration

10  agreement); *see also Dylag v. W. Las Vegas Surgery Ctr., LLC*, 719 F. App'x 568, 570 (9th

11  Cir. 2017) ("Following the U.S. Supreme Court's decision in *Arthur Andersen LLP v.*

12  *Carlisle*, 556 U.S. 624, 129 S. Ct. 1896, 173 L.Ed.2d 832 (2009), courts must apply *state*

13  law in determining the applicability of [an arbitration agreement]." (emphasis in original)).

14      In Arizona, "whether a nonparty is bound by a contract term is properly resolved by

15  the Court as a matter of law." *JTF Aviation Holdings, Inc. v. CliftonLarsonAllen LLP*, 249

16  Ariz. 510, 513 (2020) (internal quotations and alternations omitted). "In general, a party is

17  bound to arbitrate only those disputes which it has contractually agreed to arbitrate." *Smith*

18  *v. Pinnamaneni*, 227 Ariz. 170, 176 (App. 2011). But the Arizona Supreme Court

19  recognizes that nonsignatories can be bound to arbitrate under ordinary contract and agency

20  principles, like equitable estoppel. *See JTF Aviation Holdings, Inc.*, 249 Ariz. at 513–14.

21      Arizona courts apply "a variant of equitable estoppel," which is often referred to as

22  "direct benefits estoppel." *Benson*, 980 F.3d at 1331. "In the arbitration context, a

23  nonsignatory to an agreement requiring arbitration may be estopped that is, barred, from

24

25  ----

[1] Relying on *Setty v. Shrinivas Sugandhalaya LLP*, No. 18-35573, --- F.4th ----, 2021 WL
2817005 (9th Cir. 2021), the Board argues that "federal substantive law" governs whether
the Plan is bound by the ASO agreement. (Doc. 37 at 1.) *Setty*'s directive is clear: "In cases
involving the New York Convention, in determining the arbitrability of federal claims by
or against non-signatories to an arbitration agreement, we apply 'federal substantive law,'
for which we look to 'ordinary contact and agency principles.'" 2021 WL 2817005, at *2.
The instant action does not involve the New York Convention. Thus, *Setty* offers the Board
no support, and the Court will apply Arizona law, as required under *Arthur Anderson LLP
v. Carlisle*, 556 U.S. 624 (2009).

26

27

28

avoiding arbitration if that party is claiming or has received direct benefits from the contract." *Schoneberger v. Oelze*, 208 Ariz. 591, 594 (App. 2004), *superseded on other grounds by* A.R.S. § 14-10205; *Turley v. Beus*, No. 1 CA-CV 15-0107, 2017 WL 410976, at *6 (Ariz. App. Jan. 31, 2017) ("[The equitable estoppel doctrine] evaluate[s] whether a nonsignatory has received benefits from an arbitration agreement or a contract containing an arbitration clause and, therefore, should be equitably barred from avoiding arbitration.").

"[T]he direct-benefits test can be satisfied in several ways." *Benson v. Casa de Capri Enters., LLC*, No. CV-18-00006-PHX-DWL, 2019 WL 3430159, at *4 (D. Ariz. July 30, 2019) (citing *Austin v. Austin*, 237 Ariz. 201, 210 (App. 2015)). "[A] nonsignatory may be compelled to arbitrate" if it "knowingly exploits the benefits of an agreement containing an arbitration clause." *Austin*, 237 Ariz. at 210. Alternatively, a nonsignatory can be required to arbitrate if it "seeks to enforce terms of that agreement or asserts claims that must be determined by reference to the agreement." *Id.*

To start, the Court notes that it is skeptical of the Board's linguistic gymnastics. In this litigation, the Board attempts to draw a hard line between the Fund and the Plan, but the record reveals that the Fund's Trustees have not always observed this distinction. For example, prior to this lawsuit, the Board alleged that Cigna owed fiduciary duties under ERISA to the Fund. (*See* Doc. 26-1 at 11 (stating "Cigna has authority over *the Fund*'s bank account" and "Cigna is an ERISA fiduciary to *the Fund*." (emphasis added)); Doc. 27, Ex. E at 1 ("Cigna had a duty, as a fiduciary of *the fund*, to bring these extreme fees to the attention of the trustees." (emphasis added)); Doc. 27, Ex. E at 2 ("Cigna has breached its fiduciary duty to *the Fund* and violated the terms of the ASO Agreement." (emphasis added)).) Now that the Board has shifted to a litigation-based strategy, it abandons this theory and adamantly alleges that Cigna's duties are owed solely to the Plan. (Doc. 1 ¶ 41 ("Cigna functioned as a fiduciary in its administration of *the Plan*." (emphasis added)); Doc. 28 at 2 ("Cigna conflates the Fund, Board, and Plan.").) If the Plan and the Fund are not separate entities, the Board's argument that "no arbitration agreement exists between the Plan and Cigna" must fail. *See Nor-Cal Plumbing, Inc.*, 185 F.3d at 982 (finding that

trust funds were, themselves, ERISA plans). But even if the Board is correct that the Plan and the Fund are distinct entities, the Plan would still be compelled to arbitrate under the doctrine of equitable estoppel.[2]

There is no apparent dispute that the Plan received direct benefits from the Agreement in the form of Cigna's administrative services. Transcript of Oral Argument at 14 ("Let's be honest. The Plan—of course, it benefits in some way from the fact that someone is administering these claims because that effectuates the purpose of the Plan."); *see Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, No. 06CV09210 IEG (JMA), 2006 WL 8455626, at *5 (S.D. Cal. Nov. 7, 2006) (binding a nonsignatory plan to an arbitration agreement signed by the plan sponsor because "the Plan itself receive[d] direct benefits from the Agreement in the form of defendant's administrative services"). There is also substantial evidence in the record that the Plan "knowingly exploit[ed]" the ASO Agreement despite having never allegedly signed it. *Austin*, 237 Ariz. at 210. The Board took advantage of the Agreement's terms by subjecting the very claims alleged in this case to the dispute resolution procedures outlined in the Agreement. (*See* Doc. 26-1, Ex. C.) Regardless of whether the claims were alleged before this lawsuit or in this lawsuit, the Plan is the entity that would "benefit from a winning claim for breach of fiduciary duty." *See Munro*, 896 F.3d at 1093. Thus, by availing itself of the Agreement's dispute resolution procedures, the Plan "knowingly exploit[ed]" the Agreement's terms.[3]

---

[2] The Board argues Cigna waived its equitable estoppel argument because it was not raised in Cigna's motion. (Doc. 30-1, Ex. A at 3.) Although the Ninth Circuit has held that litigants waive arguments if raised for the first time in a reply brief, *Burlington Northern & Santa Fe Railway Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007), the Ninth Circuit has discretion to review an issue if it is raised in an appellee's brief, *In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991). Applying those principles to the case at bar, the Court will exercise its discretion to consider Cigna's equitable estoppel argument. The Board raised a related theory, agency, in its responsive memorandum. (Doc. 28 at 10.) *See JTF Aviation Holdings Inc.*, 249 Ariz. at 513–14 (noting that theories of "incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary . . . are not analytically distinct. They are a toolbox that courts can use to get at the essential justice of each case."). Moreover, the Board has had an adequate opportunity to address Cigna's estoppel argument in its supplemental brief. (Doc. 37.) Accordingly, the Court will reject the Board's waiver argument and consider the doctrine of equitable estoppel.
[3] The Court is not persuaded by the Board's arguments based on *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006). (Doc. 37 at 2–4.) Considering *Arthur Anderson*, this Court must apply Arizona law in determining the applicability of equitable estoppel. *See Benson*, 980

If that is not enough, the direct-benefits test is also satisfied because the alleged ERISA claims can only be resolved "by reference to the [ASO Agreement]." *See Austin*, 237 Ariz. at 210. The Complaint asserts that Cigna breached fiduciary duties that it owed to the Plan under ERISA. (Doc. 1 ¶¶ 137–43.) ERISA is "a comprehensive and reticulated statute[.]" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993). It "provides that not only the persons named as fiduciaries by a benefit plan, see 29 U.S.C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, see § 1002(21)(A), is an ERISA 'fiduciary.'" *Id.* The Board here does not allege that Cigna is a named fiduciary. (Doc. 1 ¶¶ 22–41.) Thus, the Board must establish that Cigna is a "functional" fiduciary under § 1002(21)(A). Absent a contractual grant of authority, Cigna would not qualify as a functional fiduciary. Put differently, the ASO Agreement is what ultimately delegated "authority, responsibility and discretion" for "claim administrative duties" to Cigna. (Doc. 26 at 5.) Therefore, to establish Cigna's fiduciary status, the Board would be required to, at minimum, reference the terms of the ASO Agreement. *See IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419–21 (9th Cir. 1997) (evaluating a service provider's fiduciary status by referencing the terms of an administrative services contract).

In sum, the Court will not allow the Plan to claim the benefits of the ASO Agreement while simultaneously avoiding its burdens. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)). Doing so "would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Id.* Accordingly, because the direct-benefits test is satisfied, the Court concludes that the Plan is bound by the ASO Agreement.

**B.   Arbitrability of Claims**

Because the Plan is bound by the ASO Agreement, the Court next considers whether the Agreement's arbitration provision encompasses the claims at issue. The Court begins

F.3d at 1331.

1    with the text of the provision. It reads: "any dispute between the Parties arising from or

2    relating to the performance or interpretation of this Agreement . . . . shall be settled by

3    binding arbitration," unless the parties first resolve the controversy by way of executive

4    review or mediation. (Doc. 26 at 9–10.) The Board argues the Plan's statutory ERISA

5    claims fall beyond the scope the Agreement's "narrow arbitration provision." (Doc. 28

6    at 11.) For the reasons expressed below, the Court disagrees.

7         The Court first rejects the Board's characterization of the arbitration provision as

8    "narrow." (*Id.*) Where, as here, a provision requires arbitration of disputes "arising out of

9    or relating to" an agreement, the provision is considered broad. *See Cape Flattery Ltd. v.*

10   *Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("[W]hen parties intend to include a

11   broad arbitration provision, they provide for arbitration 'arising out of or relating to' the

12   agreement."); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th

13   Cir. 1983) (noting the phrase "relating to" broadens the scope of arbitration agreements).

14   The Board argues the phrase "performance or interpretation of this Agreement" narrows

15   the provision's scope. (Doc. 28 at 11.) But, the Ninth Circuit has classified an arbitration

16   agreement containing similar language as "broad and far reaching." *See Chiron Corp.*, 207

17   F.3d at 1131 ("The parties' arbitration clause is broad and far reaching: 'Any dispute,

18   controversy or claim arising out of or relating to the validity, construction, enforceability

19   or performance of this Agreement shall be settled by binding Alternate Dispute

20   Resolution . . . ."). Thus, the Court concludes the arbitration clause is broad.

21        Having determined the scope of the provision, the Court turns now to whether the

22   alleged claims are arbitrable. Albeit in a different context, the Ninth Circuit has held that

23   contract terms "covering disputes 'relating to' a particular agreement apply to any disputes

24   that reference the agreement or have some 'logical or causal connection'" thereto. *See Yei*

25   *A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (citation

26   omitted). "The dispute need not grow out of the contract or require interpretation of the

27   contract in order to relate to the contract." *Id.* (citations omitted). Rather, the "factual

28   allegations need only 'touch matters' covered by the contract containing the arbitration

1   clause." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

2         As discussed at length above, the alleged ERISA claims necessarily reference the

3   ASO Agreement. *Supra* Part III.A; *see also Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22

4   (1st Cir. 2011) (explaining that the phrase "relating to" is synonymous with the phrase

5   "with reference to"). In addition, the factual allegations in the Complaint are virtually

6   identical to the allegations asserted by the Board in its 2019 request for executive review.

7   When allegations underlying a plaintiff's claims "touch" matters covered by an arbitration

8   agreement, "those claims must be arbitrated, whatever the legal labels attached to them."

9   *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015). To find otherwise

10  would elevate the form of the Board's claims over their substance. *See Chelsea Fam.

11  Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009)

12  ("Focusing on the facts rather than on a choice of legal labels prevents a creative and artful

13  pleader from drafting around an otherwise-applicable arbitration clause.").

14        The Board's theory—that breach of fiduciary duty claims are exempt from the Ninth

15  Circuit's ruling that ERISA claims are generally arbitrable—is unavailing. (Doc. 28 at 6–

16  7.) The Board relies on *Ramos v. Natures Image, Inc.*, No. CV 19-7094 PSG (ASx), 2020

17  WL 2404902 (C.D. Cal. Feb. 19, 2020), for support. But *Ramos* does not stand for the

18  proposition that breach of fiduciary claims under ERISA cannot be arbitrated. Instead, the

19  district court in *Ramos* explained: "The recent Ninth Circuit cases of *Munro* and *Dorman*

20  indicate that when an individual employee brings a claim for ERISA breach of fiduciary

21  duty, that claim is not subject to arbitration unless the plan itself has consented." *Ramos*,

22  2020 WL 2404902, at *6. As that passage suggests, the Board's argument is belied by

23  recent Ninth Circuit caselaw. For example, in *Dorman*, the Ninth Circuit held that a

24  "district court erred by refusing to compel arbitration of [] ERISA breach of fiduciary

25  claims." 780 F. App'x at 512. Thus, the Court rejects the Board's argument.

26        Last, the Board contends the arbitration provision does not cover the alleged claims

27  because it only applies to disputes between the Fund and Cigna. (Doc. 28 at 10.) As noted,

28  the record is ambiguous as to whether the Fund and the Plan are actually distinct entities.

- 12 -

*Supra* Part III.A. Before this lawsuit, the Board alleged that Cigna owed fiduciary duties under ERISA to the Fund. (Docs. 26-1 at 11; Doc. 27, Ex. E at 1–2.) Now, when faced with Cigna's motion to compel arbitration, the Fund's Trustees are adamant that Cigna's fiduciary duties are owed only to the Plan. (Doc. 28.) Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. At minimum, the arbitration clause is "susceptible of an interpretation that covers the asserted dispute," and considering the presumption in favor of arbitration, the Court concludes the arbitration clause governs the alleged claims. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960). The Court will therefore grant Cigna's motion to compel arbitration and dismiss this case.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendant Cigna Health and Life Insurance Company's Motion to Dismiss and Compel Arbitration (Doc. 25).

**IT IS FURTHER ORDERED dismissing** this case in its entirety.

Dated this 2nd day of August, 2021.

Michael T. Liburdi
United States District Judge